UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

FILED
DEC 20 2023
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:23CR718 MTS/SPM |
| SIDDHARTH JAWAHAR, | ) | |
| Defendant. | ) | |

**INDICTMENT**

The Grand Jury charges that, at all times relevant to this Indictment, unless otherwise specified below:

**INTRODUCTION**

1. During his scheme to defraud, Defendant Siddharth Jawahar took tens of millions of dollars from his investors. Instead of making the investments that he promised to make on his investors' behalf, however, Defendant spent his investors' money on Ponzi scheme payments to previous investors and extravagant lifestyle expenses, including payments for flights on private planes, stays at luxury hotels, and expensive outings at lavish restaurants.

**COUNTS ONE–THREE**
**(Wire Fraud)**

**I. Defendant's Scheme to Defraud**

2. Beginning by at least in or about July 2016, and continuing through at least in or about December 2023, in the Eastern District of Missouri, and elsewhere, the defendant, **SIDDHARTH JAWAHAR**, with the intent to defraud, devised and intended to devise a scheme

and artifice to defraud investors and to obtain money and property from investors by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

**A. Defendant Fraudulently Solicited Potential Investors After His Investments Experienced a Dramatic Downturn.**

3. On or about December 1, 2010, Defendant and others created Swiftarc Capital LLC, an investment company registered to do business in Texas. On or about May 17, 2013, Swiftarc Capital was registered as an investment advisor with the Texas Securities Commissioner. After he created Swiftarc Capital, Defendant initially solicited and received investors' funds that Defendant invested in a diverse array of securities. Between 2013 and 2016, Defendant took in and invested through Swiftarc Capital more than $14 million in Swiftarc investors' funds.

4. Beginning by at least in or about 2015, Defendant began investing the majority of Swiftarc Capital investors' funds in a single, overseas company ("PMP"). Over time, Defendant consolidated 99% of Swiftarc Capital investors' funds into the PMP investment. After Defendant placed nearly all his investors' money into the PMP investment, the trading price for that company experienced a dramatic decline. Defendant did not inform Swiftarc Capital investors of PMP's substantially decreased trading price. Instead, Defendant falsely represented to Swiftarc Capital investors that PMP was trading at a much higher price than it actually was.

5. When Swiftarc Capital investors requested significant amounts of their investment dollars back, Defendant was unable to make those repayments by selling off shares in PMP at the falsely inflated price that he had conveyed to his investors. Unable to repay his Swiftarc Capital investors by selling off shares in PMP, Defendant fraudulently solicited potential investors for new and additional payments so that he could repay Swiftarc Capital investors and fund his lifestyle.

**B. Defendant Misappropriated Millions of His Investors' Dollars to Repay Prior Investors and to Fund His Lavish Lifestyle.**

6. After creating Swiftarc Capital, Defendant controlled and managed several additional entities that he utilized during his scheme to defraud, including Swiftarc Fund LP, Swiftarc LLC, Swiftarc Holdings, SJ Investment Holdings LLC, Order of Magnitude Ventures LLC, Extra Sensory Perception Inc., Swiftarc Growth Fund LP, Swiftarc Opportunities Fund LP, SJ Investment Holdings LLC, SV Labs SPV 1 LP, Swiftarc Venture Labs Fund GP LLC, SJDB Ventures LLC, Swiftarc Ventures LLC, Swiftarc Venture Labs Fund LP, Swiftarc Telehealth Labs Fund LP, NI Stubbs LLC, and Swiftarc Beauty Fund LP (Defendant's entities are collectively referred to as "Swiftarc" herein).

7. Without informing potential Swiftarc investors that large portions of their investment dollars would fund Defendant's lifestyle and investor repayments, Defendant fraudulently persuaded potential Swiftarc investors to provide him with funds that they falsely believed would be invested in companies.

8. Beginning in or about July 2016 and continuing through in or about December 2023, Defendant received more than $35 million from Swiftarc investors. During that same timeframe, however, Defendant spent approximately $10 million on investments in companies. Rather than making the investments that he had promised his investors he would make, Defendant fraudulently used newly acquired investor money to pay back previous investors and to fund his lifestyle. While perpetrating his multi-million-dollar Ponzi scheme, Defendant used Swiftarc investor dollars to fund extravagant expenses—financing flights on private planes, stays at luxury hotels, and expensive outings at lavish restaurants. Further, as to many of the limited investments

that Defendant did actually make as promised, Defendant falsely inflated the profitability of those investments in his communications with investors.

### C. As Part of His Fraud Scheme, Defendant Falsely Promised Several Swiftarc Investors That He Would Make Investments in Specific Companies That Defendant Never Made.

9. During his scheme to defraud, Defendant entered into agreements with several Swiftarc investors in which Defendant falsely agreed to invest a specific amount of the Swiftarc investor's money in a specific company. In truth and fact, however, Defendant took those Swiftarc investors' dollars and never made the promised investments. In furtherance of his scheme to defraud, Defendant took the following actions:

10. On or about July 26, 2016, Defendant falsely and fraudulently promised J.B. (a Swiftarc investor in the Eastern District of Missouri) and M.S. (a Swiftarc investor in New York) that Defendant would invest $50,000 of J.B.'s money and $100,000 of M.S.'s money in Company #1. Acting in reliance on Defendant's false promise, J.B. and M.S. each paid Defendant the agreed amounts. After receiving the $50,000 from J.B. and the $100,000 from M.S., Defendant never made the promised investments in Company #1.

11. On or about October 3, 2017, Defendant falsely and fraudulently promised J.B. and M.S. that Defendant would invest an additional $50,000 of J.B.'s money and an additional $100,000 of M.S.'s money in Company #2. Acting in reliance on Defendant's false promise, J.B. and M.S. each paid Defendant the agreed amounts. After receiving the $50,000 from J.B. and the $100,000 from M.S., Defendant never made the promised investments in Company #2.

12. On or about May 17, 2018, Defendant falsely and fraudulently promised J.B. and M.S. that Defendant would invest an additional $75,000 of J.B.'s money and an additional

$150,000 of M.S.'s money in Company #3. Again relying on Defendant's false promise, J.B. and M.S. each gave Defendant yet more money. After receiving $75,000 from J.B. and the $150,000 from M.S., Defendant never made the promised investments in Company #3.

13. In an email that Defendant sent J.B. and M.S. on that same date (on or about May 17, 2018), Defendant included an additional material misrepresentation: that Swiftarc was "investing a total of $525,000" in Company #3. In truth and fact, however, Defendant never invested any money at all in Company #3.

14. Furthermore, on or about May 29, 2018, Defendant falsely and fraudulently promised S.H. (another Swiftarc investor in the Eastern District of Missouri) that Defendant would invest $50,000 of S.H.'s money in Company #3. Relying on Defendant's false promise, S.H. paid Defendant the agreed amount. After receiving the $50,000 from S.H., Defendant never made the promised investment in Company #3.

15. On or about July 1, 2022, Defendant falsely and fraudulently promised J.H. (a Swiftarc investor in Ohio) that Defendant would invest $250,000 of J.H.'s money in Company #4. Instead of making the promised investment, however, Defendant used the majority of J.H.'s $250,000 investment to repay M.S. Defendant then falsely represented to M.S. that the source of his repayment was a return on his investment in Company #2—an investment that Defendant had never actually made.

**D. Defendant Sought to Conceal His Multi-Million Dollar Ponzi Scheme From Investors.**

16. During his fraud scheme, Defendant attempted to conceal his fraud from Swiftarc investors by—among other things—fraudulently representing to investors that their investments were earning falsely inflated profits, providing false reassurances that investor funds were being

invested as promised, and failing to notify investors—prior to taking their money—that the Texas State Securities Board ordered Defendant to "cease and desist from engaging in fraud." In furtherance of his scheme to defraud, Defendant took the following actions:

17. On or about September 3, 2019, Defendant sent J.B. an email (which J.B. received in the Eastern District of Missouri) representing that J.B.'s Swiftarc Capital investment had earned an 18% year-to-date profit. In truth and fact, as Defendant well knew, J.B.'s Swiftarc Capital investment had actually declined in value during that timeframe.

18. On or about July 12, 2021, Defendant sent J.B. another email (which J.B. received in the Eastern District of Missouri) identifying specific investments Defendant falsely purported to have made, using J.B.'s money, in Company #1, Company #2, and Company #3, when in truth and fact, Defendant had not made any of the promised investments. In that same email, Defendant also falsely informed J.B. that those investments (which Defendant never made) were earning substantial profits.

19. On or about May 10, 2023, Defendant sent S.H. an email (which S.H. received in the Eastern District of Missouri), falsely representing that he would repay S.H. the money S.H. had given him to invest in Company #3. In truth and fact, Defendant never made the investment that he promised S.H. he would make in Company #3, nor did Defendant repay S.H.'s investment dollars.

20. On or about June 7, 2022, the Texas State Securities Board revoked Swiftarc Capital's authority to conduct investment activities and ordered Defendant to "cease and desist from engaging in fraud."

21. Even after the Texas State Securities Board's Disciplinary Order, Defendant continued to fraudulently solicit and receive investor funds, in violation of the Disciplinary Order, without informing those investors that the Texas State Securities Board ordered Defendant to "cease and desist from engaging in fraud." For example, in the weeks after the Texas State Securities Board's Disciplinary Order, Swiftarc Investor A.B. gave Defendant $1 million dollars—in reliance on Defendant's false promise that Defendant would invest those funds in companies. Not only did Defendant falsely represent that A.B.'s money would be invested in companies, but Defendant also failed to disclose to A.B.—prior to taking a million dollars from A.B.—that the Texas State Securities Board had recently ordered Defendant to "cease and desist from engaging in fraud."

## II. Wire Transmissions

22. On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**SIDDHARTH JAWAHAR,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 9/3/2019 | Defendant's email to Swiftarc Investor J.B., in which Defendant represented that J.B.'s Swiftarc Capital investment was earning falsely inflated profits. |

| | | |
|---|---|---|
| 2 | 7/12/2021 | Defendant's email to Swiftarc Investor J.B., in which Defendant represented that he made certain investments with J.B.'s money that Defendant never made. |
| 3 | 5/10/2023 | Defendant's email to Swiftarc Investor S.H., in which Defendant falsely represented that he would repay S.H. the money S.H. had given him to invest in Company #3. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT FOUR**
**(Investment Adviser Fraud)**

23. Each of the allegations in this Indictment is hereby incorporated by reference as if fully set forth herein.

24. From at least in or about July 2016, and continuing through at least in or about December 2023, within the Eastern District of Missouri,

**SIDDHARTH JAWAHAR,**

being an investment adviser, by use of the mails and by use of means and instrumentalities of interstate commerce, directly and indirectly, did willfully employ devices, schemes, and artifices to defraud one or more investors and prospective investors; did willfully engage in transactions, practices, and courses of business which operated as a fraud and deceit upon investors and prospective investors; and did willfully engage in acts, practices, and courses of business which were fraudulent, deceptive, and manipulative.

All in violation of Sections 206 and 217 of the Investment Advisers Act (15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4) & 80b-17), and Title 18, United States Code, Section 2.

**FORFEITURE ALLEGATION**

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One

through Three, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

________________________
FOREPERSON

SAYLER A. FLEMING
United States Attorney

________________________
Derek J. Wiseman, #67257MO
Assistant United States Attorney