IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:23-cr-00718-MTS/SPM |
| SIDDHARTH JAWAHAR, | ) |
| Defendant. | ) |

### DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

COMES NOW Defendant Siddharth Jawahar, by and through his undersigned counsel, and provides the following in opposition to the Government's Motion for Pretrial Detention, and in favor of his immediate release:

### Argument

The alleged offenses in this case (Wire Fraud, under 18 U.S.C. §1343 and Investment Adviser Fraud, under 15 U.S.C. §8b-6) are not among the enumerated offenses in the Bail Reform Act ("BRA") that establish a right to a detention hearing. Rather, the Government's Motion for Pretrial Detention (ECF Doc. 4) is brought under the theory that Mr. Jawahar poses a "serious risk of flight" under §3142(f)(2)(A). Additionally, the Government has moved that Mr. Jawahar be detained pursuant to §3142(f)(2)(B) as a "substantial [sic] obstruction of justice risk."

I. **In Order to Even Hold a Detention Hearing, the Government Has the Burden of Demonstrating That Mr. Jawahar Poses a *"Serious"* Risk of Flight Under §3142(f)(2)(A), or a "Serious" Risk of Obstructing or Attempting to Obstruct Justice . . . or Intimidate a Prospective Witness.**

By its plain language, §3142(f)(2)(A) permits a hearing and detention only when there is a "*serious* risk that [the defendant] will flee." "A court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue." *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *7 (M.D. Tenn. May 27, 2021). Detention based on serious risk of flight is only appropriate for those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. *Id.* (holding that a "case involves a 'serious risk of flight,' as opposed to a mere risk of non-appearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings").

The Government cites to *United States v. Cook*, 87 F.4th 920 (8th Cir. 2023) to suggest that because a defendant faces a "potentially lengthy prison sentence if convicted" a "serious risk of flight and nonappearance is obvious." (ECF Doc. 4, p. 4). However, in *Cook*, the defendant "absconded from probation for three years, leaving the jurisdiction in which she had been ordered to report for probation." *Id.* at 925. The Court also noted that the defendant in that case was charged with arson— endangering 400 people—while she was under supervision for a prior drug distribution charge, in addition to having never served a prison term before and had a criminal history in both Texas and Missouri, finding "the serious risk of flight and

nonappearance obvious." *Id.* Having no similarities with the instant case, *Cook*, then, stands only for the proposition that "the § 3142(g) factors, which govern the § 3142(e)(1) inquiry, are relevant both "to determining whether Defendant presents a serious risk of flight and [whether] there are conditions of release that will reasonably assure Defendant's appearance." *Id.* at 924. *Cook* also notes that to "the extent that § 3142(f)(2)(A) requires a more *serious* risk of flight, we have that here." (emphasis in original).

Additionally, the Governmentt has supplemented its Motion to Detain with an allegation that Mr. Jawahar "presents a substantial obstruction of justice risk" under §3142(f)(2)(B). It should be noted that the language of that section describes a "a *serious* risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." §3142(f)(2)(B) (emphasis added.) The Government's supplement does not demonstrate a serious risk that Mr. Jawahar will obstruct justice or intimidate anyone, as described below in section IV.

II. **Mr. Jawahar's Immigration Status Does Not Show a Serious Risk of Flight.**

The Government asserts that because Mr. Jawahar was "without any lawful status" during some of his time in the United States, he has shown an "inability and unwillingness to follow the law." (ECF Doc. 4, p. 5). The Government also cited to a case affirming a detention order "where the defendant was 'an Indian native present in the United States on a visa' who also traveled internationally and expressed an interest in returning to India or Pakistan". (ECF Doc. 4, p. 4) (citing *United States v.*

*Maheshwari*, 358 F. App'x 765, 766-7 (8th Cir. 2010)). However, it should be noted that in that case, the Court's decision was also based on the defendant's "remov[al of] $50,000 in cash from an account," with no information as to "where the cash is presently located," his "frequent international travel[] since h[is] arrival in the United States," and his history of sending large sums of money outside of the United States. *Id.* at 766. Additionally, the defendant in *Maheshwari* was charged with "creating false immigration records," a charge which itself could suggest a serious flight risk. *Id.*

However, a defendant's status as an undocumented immigrant does not trigger a right to a detention hearing. "Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings." *U.S. v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015); *see also United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). Some courts have ruled that a defendant's immigration status can be a consideration in a risk of non-appearance analysis, but that standing alone, it cannot demonstrate such a risk of flight. *U.S. v. Lozano-Miranda*, 2009 WL 113407 at *3. In *Lozano-Miranda*, the District Court in Kansas found that an undocumented immigrant with multiple prior removals did not amount to a risk of flight where that defendant had resided in the United States for several years and had strong ties to the community. *Id.* Further, it is important to note that *Lozano-Miranda* involved an enumerated offense allowing for a detention hearing and analyzed the ordinary risk of flight that conditions could not reasonably be set to assure defendant's appearance,

and not a serious risk of flight – the more demanding burden that is required of the Government in the case at bar. See *Id.*

The Bail Reform Act establishes a norm that defendants should be released, and only allows for detention pending trial under certain strict circumstances. To establish a serious risk of flight such that the Government is permitted to seek detention in a case is a high burden in the absence of a congressionally-enumerated offense allowing for detention. The Northern District of Iowa found no such serious risk of flight in a case of an undocumented immigrant from El Salvador charged with illegal reentry. *United States v. Villatoro-Ventura*, 330 F.Supp.3d 1118, 1135-36 (N.D. Iowa 2018). While noting that defendant had previous convictions for felonies in state court, the *Villatoro-Ventura* court noted his lack of flight in previous cases, finding the Government did not establish a serious risk of flight. *Id.*

The Government also cites to *United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003) where the defendant was "not a United States citizen" and citing "18 U.S.C. § 2423(b), which . . . weighs strongly in favor of a finding Abad would be a flight risk." (ECF Doc. 4, p. 3). Notably, the defendant in *Abad* was charged with interstate travel with intent to commit criminal sexual activity with a minor, which is an offence under 18 U.S.C. §2423, which raises a statutory rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* at 795-797. As such, the citation to *Abad* is inapposite and misleading, as no statutory rebuttable presumption arises out of a wire fraud charge in the instant case. To the contrary, in the absence of such a

rebuttable presumption, there is a statutory presumption that Mr. Jawahar should be *released* pending his trial, and the Government must not be allowed to invert that presumption. *See* 18 U.S.C. §3142(a)-(c); *United States v. Salerno*, 481 U.S. 739, 754, 107 S. Ct. 2095, 2105, 95 L. Ed. 2d 697 (1987) ("when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more.") (citing *Stack v. Boyle*, 342 U.S. . 1, 4, 72 S. Ct. 1, 3, 96 L. Ed. 3 (1951) ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.")

Even the risk that a non-citizen defendant could be deported through an involuntary removal by Immigration and Customs Enforcement is not sufficient to show serious risk of flight. "A risk of involuntary removal does not, by itself, establish "a serious risk that such person will flee," such that the Government may seek pre-trial detention pursuant to § 3142(f)(2)(A)." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) ("adopt[ing] the reason and holdings of the Ninth and Tenth Circuits in" *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) and *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). "[A]lthough the Court will necessarily consider Defendant's immigration status as part of her history and characteristics, the risk of her being involuntarily removed from this country before trial is not an appropriate consideration in determining whether she is a flight risk. Defendant is entitled to an individualized assessment of whether pretrial release is appropriate considering all of the § 3142(g) factors." *United States*

v. *Solis*, 453 F. Supp. 3d 1161, 1166 (S.D. Iowa 2020). *But see United States v. Ramirez-Hernandez*, 910 F. Supp. 2d 1155, 1160 (N.D. Iowa 2012) ("If I release them, they will return to ICE custody and it will simply be a race against the clock that will decide whether they are removed to Mexico or prosecuted for these charges.") However, *Ramirez-Hernandez* involved a situation where the defendants were charged with illegal reentry, had been previously ordered removed, and therefore, could be deported immediately by ICE, pursuant to the previous order, without a right to a hearing before an immigration judge (citing 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8). Other Courts have pointed out that non-citizen defendants are less likely to fail to appear than other defendants. *See United States v. Figueroa-Alvarez*, No. 4:23-CR-00171-DCN, 2023 WL 4485312, at *6 (D. Idaho July 10, 2023) ("Before it embarks on that examination, the Court addresses what it perceives as a common misconception. Namely, that alien defendants granted pretrial release are more likely to fail to appear or flee than defendants who are United States citizens or lawful residents."). Mr. Jawahar's immigration status does not suggest flight risk, much less "serious" flight risk.

### III. The "Quantum of Evidence" Required to Demonstrate Serious Risk of Flight Is Not Present in This Case.

"In cases where only a serious risk of flight is at issue under § 3142(f)(2), it is generally accepted that *more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required* to support a finding of serious risk of flight. *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) (citing *United States v. Friedman,* 837 F.2d 48, 49 (2nd Cir.1988) (emphasis added)). "A mere

theoretical opportunity for flight is not sufficient grounds for pretrial detention." *Id.* (citing *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (and "holding possession of one false form of identification not enough to justify pretrial detention in the absence of evidence that defendant actually intended to flee from prosecution")).

Relevant factors that the Court may consider in determining whether a defendant poses a serious risk of flight include the use of several aliases, efforts to avoid arrest, hidden assets, or other evidence of "a serious intent to flee the country in response to an indictment." *Id. Giordano* is also instructive because that case involved 35 counts of conspiracy, mail fraud, wire fraud, and money laundering. *Id.* at 1257. In denying the motion for pretrial detention, the United States Magistrate Judge considered that in "any economic fraud case, of course, the evidence is often circumstantial, reliant on complicated accounting testimony, and subject to interpretation. The Government also has the difficult burden of proving criminal intent with respect to all these transactions to distinguish them from mere breaches of contract or fraudulent torts subject to civil jurisdiction. At the same time, the Court recognizes that there may be very substantial defenses to these claims." *Id.* at 1266. In that case, the Government also alleged that the defendant was "already subject to prior regulatory proceedings by various agencies" and was also being "investigated by other federal and state agencies." *Id.* at 1265. Additionally, the court considered that the alleged economic loss of "approximately $4.5 million, is significant but certainly not as significant as other cases that can unfortunately be found in this district." *Id.* at 1267.

As the Court in *United States v. White* notes, establishing a serious risk of flight requires an independent "quantum of evidence" of multiple factors present. 2021 WL 2155441, *7 (M.D. Tenn. 2021). The evidence provided by the Government in *White* included that the defendant had previously been charged with the same offense conduct; the defendant was charged with evading arrest in a pending case; the defendant fled in the instant case before the court; the defendant was on pre-trial release on another case when the offense was alleged to have occurred; the defendant lacked community ties in the district; the Defendant had criminal convictions in three different states; the defendant had a failure to appear in Georgia and the defendant had a poor record of compliance with Pre-Trial Release. *Id.* at *12. The Court, finding the allegations of flight to be based on pending charges and the failure to appear as a minor-in-nature controlled substance possession, ruled that these factors were insufficient to find a serious risk of flight. *Id.* at *13. Failures to appear in previous cases have been found to establish a serious risk of flight when multiple such failures exist. *See United States v. Gibson*, 384 F.Supp.3d 955, 964-65 (N.D. Indiana 2019) (finding that five "bath faith" failures to appear, along with two allegations of flight from law enforcement at speeds of 150 miles per hour established a serious risk of flight).

The Government makes much of one previous arrest of Mr. Jawahar for intoxicated driving, again citing to *Abad*, a very different kind of case, where the citation makes clear that the court was discussing the risk of flight in the context of "the nature of the crime charged-sexual activity with a minor-[which] weighs heavily

against release." *Abad,* 350 F.3d at 798. In contrast, a criminal record that does not involve violence or sexual abuse *does not* automatically render a defendant a serious risk of flight. To the contrary, evidence that a defendant has complied with court orders in the past supports a finding that he is *not* a serious risk of flight. *See, e.g., United States v. Williams,* 1988 WL 23780, at *1 (N.D. Ill. Mar. 8, 1988) (defendant who made regular state court appearances in the past deemed not a serious flight risk). The instant case does not show a history of failing to appear.

IV. **The Facts Do Not Show a Serious Risk of Obstructing or Attempting to Obstruct Justice . . . or Intimidate a Prospective Witness.**

The Government's supplement in this matter is rife with suggestive exaggerations and inuendo, insufficient to form the factual basis of a clear and convincing finding that pre-trial detention is warranted. The Government makes the bald assertion that Mr. Jawahar "engaged in witness tampering." (ECF Doc. 22, p. 2). As the Government and this Court is well aware, the inquiry before the Court here is whether there is "a serious risk" that Mr. Jawahar "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness," and not whether he has or will "tamper with" a witness or victim. Mr. Jawahar has not been charged with tampering with a witness. "Tampering with a witness, victim, or an informant is criminalized at 18 U.S.C. §1512, which provides that:

(a) (1) Whoever kills or attempt to kill another person, with intent to-

(A) prevent the attendance or testimony of any person . . . or . . .

(2) Whoever *uses physical force or the threat of physical force* against any person, or attempts to do so, with intent to—

(A) Influence, delay, or prevent the testimony of any person in an official proceeding;

(B) Cause or induct any person to—

- (i) Withhold testimony, or withhold a record, document, or other object, from an official proceeding;

- (ii) Alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official procedding;

- (iii) Evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding . . .

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(1) Influence, delay, or prevent the testimony of any person . . . shall be punished as provided. . .

18 U.S.C. §1512. Nothing even remotely of the sort described in the tampering statute is present in this case, and none of the facts that the Government has described in its supplement show a serious risk of obstructing or attempting to obstruct justice. What is described is a singular statement allegedly made to "Victim S.E.": **"be dedicated."** Not even a paranoid or cynical reading could twist those two positive words to fit the tampering statute, let alone show a serious risk of obstructing justice. If the Government had anything else from that conversation that indicated a risk of obstructing justice, they would have provided it to the Court. Not only does it fail to show a serious risk, it can hardly be taken seriously, and this Court should not accept

such an exaggerated and paltry showing, when an allegation as serious as obstruction has been made.

In addition, the Government describes two conversations where Mr. Jawahar allegedly discussed the *cost of hiring a private attorney to defend him in this case* with two unnamed persons over the phone. The Government attempts to shoehorn bits of these innocent conversations—taken out of context—into an allegation that Mr. Jawahar "lied to this Court about being indigent" and allegedly made an "admission . . . that he actually does have substantial sums of money . . . in stark contrast to his sworn statement to this Court . . . " (ECF Doc. 22) (referencing ECF Doc. 14).[1] A review of that financial affidavit shows that the question posed was "Do you have any cash, or money in savings or checking accounts? To which Mr. Jawahar indicated "yes", giving an answer to "the total approximate amount after monthly expenses." The Government claims that these disclosures "stand in stark contrast" to his "admissions" that he has "substantial sums of money." Looking at the plain text of the alleged portions of transcripts of conversations that the Government has reproduced in its supplement, Mr. Jawahar states that he has "resources", that he

---

[1] The cavalier way in which the Government has alleged "tampering" is mirrored by the fact that the Government has included private and confidential information about the balance(s) of Mr. Jawahar's savings or checking accounts in a public filing with the Court in its supplement. 18 U.S.C. §3153(c)(1) provides "information obtained in the course of performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential." The balance of those accounts was (correctly and honestly) disclosed by Mr. Jawahar to pretrial services in a financial affidavit (ECF Doc. 14) which is not made public on PACER, and Defendant respectfully suggests that the Government should have redacted that information or requested that the document be sealed.

has "money", "I just need to not be [detained] to get access to it" to pay for a "retainer" and to "get this whole case done." These comments are obviously discussions about *how he will pay for legal representation in this case*, and none of them contradict his disclosure, which was made purely in reference to his checking and savings account balances. It should also be noted that Mr. Jawahar allegedly states "I can't say too much on this phone" during the conversation, indicating that he understands that his calls are being recorded, which further undermines the assertion of witness or victim intimidation, by showing that if the Government's theory is correct, then Mr. Jawahar intimidated a victim or witness while *knowing* that it was being recorded. The suggestion is belied by common sense.

In contrast, understanding that he is being targeted with prosecution by a Government who is obviously intent on holding him pretrial, Mr. Jawahar very wisely limited his discussion to his need to *secure funds to access his ability to present a legal defense*. Mr. Jawahar's statements that "I have resources" and "I have money in different areas" refer to *his belief at that time that his extended family would raise funds among themselves to pay for a lawyer on his behalf*, do not contradict his sworn statement in any way, and do not even suggest on their face through any reasonable reading that Mr. Jawahar is hiding anything. If anything, Mr. Jawahar's attempt at raising money from his family to fund a legal defense weighs *against* a finding that he is a serious flight risk, as it shows that Mr. Jawahar intends to defend himself in court through private counsel by staying in the United States through the pendency of his trial.

As a final push to convince this Court to detain him, the Government presents a highly selective, and misleading narrative of events surrounding Mr. Jawahar's representations of his immigration status, stating that "Defendant lied to the Pretrial Services Office in the Southern District of Florida about his immigration status", allegedly telling "the Pretrial Services Officer in Florida that he was a 'legal permanent resident of the United States." (Doc. 22, p. 3). This narrative is directly contradicted by a Supplemental Bond Report filed by the U.S. Pretrial Services Officer in this case (ECF Doc. 21). That Report states that "The defendant also advised that although he reported having obtained permanent, legal resident status in the United States during his initial bond interview, upon further consideration, he advised that he is a non-citizen of the United States." (ECF Doc. 21, p. 2). What actually occurred in the Southern District of Florida, is that in response to a question about whether he was a "permanent resident of the United States," Mr. Jawahar—who is not a native English speaker—stated "yes," believing that the answer was yes based on his nineteen years of living in the United States. Without waiving the attorney-client privilege covering those conversations, Mr. Jawahar subsequently spoke to a public defender in Florida who advised him that "lawful permanent resident" is a legal term of art with a specific statutory definition and does not just refer—as Mr. Jawahar had mistakenly assumed—to a long-term length of residence in this country. What the Supplemental Bond Report (ECF Doc. 21) and the Pretrial Services Report (ECF Doc. 21-1) show together is that upon being interviewed in the

Eastern District of Missouri, Mr. Jawahar immediately self-reported the mistaken answer regarding his immigration status, and actively corrected the mistake.

The Supplemental Bond Report also states that "Additional information received from U.S. Immigration and Customs Enforcement (ICE) and the U.S. Department of Homeland Security indicates that the defendant's F-1 Visa status was terminated in 2012, however, he subsequently obtained Active Post-Completion OPT [Optional Practical Training] status, which extended his ability to remain in the United States for additional period of time. ICE records reflect that the defendant's authorized OPT status concluded in 2018." (ECF Doc. 21, p. 2). This undermines the Government's claim in their original Motion to detain Mr. Jawahar that "his time in the United States without any lawful status demonstrated his inability and unwillingness to follow the law." (ECF Doc. 4, p. 5). Regardless of current political attempts to associate immigrants with law-breaking, evidence that Mr. Jawahar may have made mistakes concerning the lawfulness of his immigration status—without showing any evidence of intent—do not make any showing relevant under the analysis prescribed in §3142(f)(2)(A) and §3142(f)(2)(B), and should be disregarded by this Court as irrelevant to the serious flight-risk and serious obstruction analysis.

Additionally, the Court should consider that in the Pretrial Services Report (ECF Doc. 21-1) from the Southern District of Florida, the Pretrial Services Officer recommended that "defendant be released on a percentage bond" with additional restrictions. (p. 4). To the extent that the Pretrial Services Officer in the Eastern District of Missouri made a contrary recommendation in its Supplemental Bond

Report, it should be noted that no Pretrial Services Report was independently prepared and filed in this judicial district, and that the Pretrial Services Officer in the Eastern District relied on the Report filed in the Southern District. Because "only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant," this Court should give greater weight to the recommendation of Florida Pretrial Services, who prepared the Report, and recommended pretrial release. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir.1985)).

V. **The Proper Question for this Court is Whether There Is a Condition or Combination of Conditions Which Will Reasonably Assure Mr. Jawahar's Future Appearance and the Safety of the Community and the Answer to Those Questions is in the Affirmative.**

Under the Bail Reform Act of 1984, as amended, Congress has determined that any person charged with an offense under the federal criminal laws shall be released pending trial, subject to appropriate conditions, unless a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). In Section II of their Argument, the Government asserts that "even if conditions could assure Defendant's Appearance . . . [he] still must be detained because no conditions can protect the community . . ." (ECF Doc. 4, p. 5). This conclusory statement misstates the current state of law surrounding this question. *See Gibson*, 384 F.Supp.3d 955, 960-964. ("The law is unclear regarding whether a judge may detain a defendant in such a case solely because the defendant is such a

danger to the community that no conditions can reasonably assure public safety . . . The Court's limited review of cases suggests this is an unresolved issue", *Id.* at 960. "For these reasons, the Court will not consider the danger Gibson poses to the community because consideration of dangerousness is improper where, as is the case here, the sole ground for detention is 18 U.S.C. § 1342(f)(2)(A)", *id.* at 964.) *See also Giordano*, 370 F. Supp. 2d 1256, 1261-1263. ("Although the Government initially argued that it was operating under both the 'risk of flight and economic danger to the community' prongs of the statute, upon further questioning from the Court the Government candidly conceded that its detention motion could only rise or fall under the serious risk of flight provision of subsection (f)(2)(A)", *id.* at 1261 (internal citations omitted), and "The Government's concession and clarification were entirely appropriate. Circuit Court opinions considering this issue under section 3142(f) have all ruled that the "dangerousness" prong for pretrial detention under section 3142(e) *only* applies to cases that arise under section 3142(f)(1)." *Id.*)

While the "nature and seriousness of the danger to any person or the community" is a "factor to be considered" in determining whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of the community" under § 3142(g), dangerousness, through economic harm, does *not* constitute an independent reason why the Court could continue to hold Mr. Jawahar, as outlined above in *Gibson* and *Giordano*. To continue to detain Mr. Jawahar, the Government would have had to have presented facts sufficient to support a finding *supported by clear and convincing evidence*, that *no*

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. The Government cannot meet that burden. In this case, a combination of conditions, including electronic monitoring, house arrest, the payment of a bond, and a restriction on any financial transactions that Mr. Jawahar is allowed to engage in are sufficient to both ensure his future appearance and to protect the public from any danger.

## Conclusion

The totality of the facts before this Court cannot be said to equate to the "quantum of evidence" that establishes the "serious risk of flight" or "serious risk" of obstruction required to permit the Government to seek a detention hearing in this matter, and this Court should find that they have not met their burden of showing that *no conditions* can assure future court appearance by Mr. Jawahar, and order him released as his detention would not comport with the strict requirements of the Bail Reform Act.

NEWTON BARTH, L.L.P

By: */s/ Talmage E. Newton IV*
Talmage E. Newton IV, MO56647
talmage@newtonbarth.com
555 Washington Ave., Ste. 420
St. Louis, Missouri 63101
(314) 272-4490 - Office
(314) 762-6710 - Facsimile

*Attorney for Defendant Jawahar*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically served on all parties of record and filed with the court via the court's e-filing System on this 15th day of February 2024.

/s/ Talmage E. Newton IV