UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:23-cr-00718-ZMB |
| SIDDHARTH JAWAHAR, | ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Siddharth Jawahar, represented by defense counsel, Levell Littleton, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1, 2, and 3 of the Indictment, the United States agrees to dismiss—at the time of the sentencing—the remaining count of the Indictment (Count 4). In addition, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's wire fraud scheme described in the Indictment, of which the

United States is aware at this time. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that the United States will request a sentence within the bottom half of the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that Defendant may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein.

**3. ELEMENTS:**

As to Counts 1–3, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, Defendant voluntarily and intentionally devised or participated in a scheme to obtain money by means of material false representations or promises, which scheme is described in the indictment;

**Two**, Defendant did so with intent to defraud; and

**Three**, Defendant caused to be used an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme, that is the wire communications charged in Counts 1–3 of the Indictment.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning by at least July 2016, and continuing through at least December 2023, in the Eastern District of Missouri, and elsewhere, Defendant Siddharth Jawahar, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud investors and to obtain money and property from investors by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

During his scheme to defraud, Defendant took approximately $35,607,984.16 from his investors. But Defendant only invested approximately $10,081,248.55 of his investors' money. Instead of making the investments that he promised to make on his investors' behalf, Defendant spent his investors' money on Ponzi scheme payments to previous investors and extravagant lifestyle expenses, including payments for flights on private planes, stays at luxury hotels, and expensive outings at lavish restaurants.

### A. Defendant Fraudulently Solicited Potential Investors After His Investments Experienced a Dramatic Downturn.

On or about December 1, 2010, Defendant and others created Swiftarc Capital LLC, an investment company registered to do business in Texas. On or about May 17, 2013, Swiftarc Capital was registered as an investment advisor with the Texas Securities Commissioner. After he created Swiftarc Capital, Defendant initially solicited and received investors' funds that Defendant invested in a diverse array of securities. Between 2013 and 2016, Defendant took in and invested through Swiftarc Capital more than $14 million in Swiftarc investors' funds.

Beginning by at least in or about 2015, Defendant began investing the majority of Swiftarc Capital investors' funds in a single, overseas company ("PMP"). Over time, Defendant consolidated 99% of Swiftarc Capital investors' funds into the PMP investment. After Defendant placed nearly all his investors' money into the PMP investment, the trading price for that company experienced a dramatic decline. Defendant did not inform Swiftarc Capital investors of PMP's substantially decreased trading price. Instead, Defendant falsely represented to Swiftarc Capital investors that PMP was trading at a much higher price than it actually was.

When Swiftarc Capital investors requested significant amounts of their investment dollars back, Defendant was unable to make those repayments by selling off shares in PMP at the falsely inflated price that he had conveyed to his investors. Unable to repay his Swiftarc Capital investors by selling off shares in PMP, Defendant fraudulently solicited potential investors for new and additional payments so that he could repay Swiftarc Capital investors and fund his lifestyle.

**B. Defendant Misappropriated Millions of His Investors' Dollars to Repay Prior Investors and to Fund His Lavish Lifestyle.**

After creating Swiftarc Capital, Defendant controlled and managed several additional entities that he utilized during his scheme to defraud, including Swiftarc Fund LP, Swiftarc LLC, Swiftarc Holdings, SJ Investment Holdings LLC, Order of Magnitude Ventures LLC, Extra Sensory Perception Inc., Swiftarc Growth Fund LP, Swiftarc Opportunities Fund LP, SJ Investment Holdings LLC, SV Labs SPV 1 LP, Swiftarc Venture Labs Fund GP LLC, SJDB Ventures LLC, Swiftarc Ventures LLC, Swiftarc Venture Labs Fund LP, Swiftarc Telehealth Labs Fund LP, NI Stubbs LLC, and Swiftarc Beauty Fund LP (Defendant's entities are collectively referred to as "Swiftarc" herein).

Without informing potential Swiftarc investors that large portions of their investment dollars would fund Defendant's lifestyle and investor repayments, Defendant fraudulently persuaded potential Swiftarc investors to provide him with funds that they falsely believed would be invested in companies.

Beginning in or about July 2016 and continuing through in or about December 2023, Defendant received more than $35 million from Swiftarc investors. During that same timeframe, however, Defendant spent approximately $10 million on investments in companies. Rather than making the investments that he had promised his investors he would make, Defendant fraudulently used newly acquired investor money to pay back previous investors and to fund his lifestyle. While perpetrating his multi-million-dollar Ponzi scheme, Defendant used Swiftarc investor dollars to fund extravagant expenses—financing flights on private planes, stays at luxury hotels, and expensive outings at lavish restaurants. Further, as to many of the limited investments that Defendant did actually make as promised, Defendant falsely inflated the profitability of those investments in his communications with investors.

(A) → the defendant estimates he spent over $600K on business expenses. - DW -LL [illegible]

### C. As Part of His Fraud Scheme, Defendant Falsely Promised Several Swiftarc Investors That He Would Make Investments in Specific Companies That Defendant Never Made.

During his scheme to defraud, Defendant entered into agreements with several Swiftarc investors in which Defendant falsely agreed to invest a specific amount of the Swiftarc investor's money in a specific company. In truth and fact, however, Defendant took those Swiftarc investors' dollars and never made the promised investments. In furtherance of his scheme to defraud, Defendant took the following actions:

On or about July 26, 2016, Defendant falsely and fraudulently promised J.B. (a Swiftarc investor in the Eastern District of Missouri) and M.S. (a Swiftarc investor in New York) that Defendant would invest $50,000 of J.B.'s money and $100,000 of M.S.'s money in Company #1. Acting in reliance on Defendant's false promise, J.B. and M.S. each paid Defendant the agreed amounts. After receiving the $50,000 from J.B. and the $100,000 from M.S., Defendant never made the promised investments in Company #1.

On or about October 3, 2017, Defendant falsely and fraudulently promised J.B. and M.S. that Defendant would invest an additional $50,000 of J.B.'s money and an additional $100,000 of M.S.'s money in Company #2. Acting in reliance on Defendant's false promise, J.B. and M.S. each paid Defendant the agreed amounts. After receiving the $50,000 from J.B. and the $100,000 from M.S., Defendant never made the promised investments in Company #2.

On or about May 17, 2018, Defendant falsely and fraudulently promised J.B. and M.S. that Defendant would invest an additional $75,000 of J.B.'s money and an additional $150,000 of M.S.'s money in Company #3. Again relying on Defendant's false promise, J.B. and M.S. each gave Defendant yet more money. After receiving $75,000 from J.B. and the $150,000 from M.S., Defendant never made the promised investments in Company #3.

In an email that Defendant sent J.B. and M.S. on that same date (on or about May 17, 2018), Defendant included an additional material misrepresentation: that Swiftarc was "investing a total of $525,000" in Company #3. In truth and fact, however, Defendant never invested any money at all in Company #3.

Furthermore, on or about May 29, 2018, Defendant falsely and fraudulently promised S.H. (another Swiftarc investor in the Eastern District of Missouri) that Defendant would invest $50,000

of S.H.'s money in Company #3. Relying on Defendant's false promise, S.H. paid Defendant the agreed amount. After receiving the $50,000 from S.H., Defendant never made the promised investment in Company #3.

On or about July 1, 2022, Defendant falsely and fraudulently promised J.H. (a Swiftarc investor in Ohio) that Defendant would invest $250,000 of J.H.'s money in Company #4. Instead of making the promised investment, however, Defendant used the majority of J.H.'s $250,000 investment to repay M.S. Defendant then falsely represented to M.S. that the source of his repayment was a return on his investment in Company #2—an investment that Defendant had never actually made.

**D. Defendant Sought to Conceal His Multi-Million Dollar Ponzi Scheme From Investors.**

During his fraud scheme, Defendant attempted to conceal his fraud from Swiftarc investors by—among other things—fraudulently representing to investors that their investments were earning falsely inflated profits, providing false reassurances that investor funds were being invested as promised, and failing to notify investors—prior to taking their money—that the Texas State Securities Board ordered Defendant to "cease and desist from engaging in fraud." In furtherance of his scheme to defraud, Defendant took the following actions:

On or about September 3, 2019, Defendant sent J.B. an email (which J.B. received in the Eastern District of Missouri) representing that J.B.'s Swiftarc Capital investment had earned an 18% year-to-date profit. In truth and fact, as Defendant well knew, J.B.'s Swiftarc Capital investment had actually declined in value during that timeframe.

On or about July 12, 2021, Defendant sent J.B. another email (which J.B. received in the Eastern District of Missouri) identifying specific investments Defendant falsely purported to have

made, using J.B.'s money, in Company #1, Company #2, and Company #3, when in truth and fact, Defendant had not made any of the promised investments. In that same email, Defendant also falsely informed J.B. that those investments (which Defendant never made) were earning substantial profits.

On or about May 10, 2023, Defendant sent S.H. an email (which S.H. received in the Eastern District of Missouri), falsely representing that he would repay S.H. the money S.H. had given him to invest in Company #3. In truth and fact, Defendant never made the investment that he promised S.H. he would make in Company #3, nor did Defendant repay S.H.'s investment dollars.

On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, Defendant did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 9/3/2019 | Defendant's email to Swiftarc Investor J.B., in which Defendant represented that J.B.'s Swiftarc Capital investment was earning falsely inflated profits. |
| 2 | 7/12/2021 | Defendant's email to Swiftarc Investor J.B., in which Defendant represented that he made certain investments with J.B.'s money that Defendant never made. |
| 3 | 5/10/2023 | Defendant's email to Swiftarc Investor S.H., in which Defendant falsely represented that he would repay S.H. the money S.H. had given him to invest in Company #3. |

**5. <u>STATUTORY PENALTIES</u>:**

As to Counts 1–3, the defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

**6. <u>U.S. SENTENCING GUIDELINES: 2025 MANUAL</u>:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. <u>Chapter 2 Offense Conduct</u>:**

**(1) <u>Base Offense Level</u>:** As to Counts 1–3, the parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) <u>Specific Offense Characteristics</u>:** The parties agree that the following Specific Offense Characteristics apply as to Counts 1–3:

The parties agree that 22 levels should be added pursuant to Section 2B1.1(b)(1)(L) because the loss exceeds $25,000,000, but does not exceed $65,000,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims.

The parties agree that 4 levels should be added pursuant to Section 2B1.1(b)(20)(iii) because the offense involved a violation of securities law and, at the time of the offense, the defendant was an investment adviser.

b. **Chapter 3 Adjustments:**

**(1) Obstructing or Impeding the Administration of Justice:** The Government believes that 2 levels should be added pursuant to Section 3B1.3 because the defendant willfully attempted to obstruct of impede the administration of justice with respect to the investigation and prosecution of the instant offense of conviction. The Defendant does not agree to this enhancement.

**(2) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

c. **Other Adjustments:** The parties have no further agreement regarding any other adjustments.

d. **Estimated Total Offense Level:** The parties have no agreement on the total offense level. The parties are permitted to object to or accept any enhancements or reductions in the presentence investigation report.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**(1)** **<u>Adjustment for Certain Zero-Point Offenders</u>:** If the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted from the total offense level under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

**f.** **<u>Effect of Parties' U.S. Sentencing Guidelines Analysis</u>:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

**7.** **<u>WAIVER OF APPEAL AND POST-CONVICTION RIGHTS</u>:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)** **<u>Non-Sentencing Issues</u>:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an

order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Indictment.

**f. <u>Forfeiture</u>:** The defendant agrees to the forfeiture set forth in the Forfeiture Allegation in the Indictment to which the Defendant is pleading guilty. This agreement includes any items that were seized by law enforcement officials during the course of this investigation. The Defendant also agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing. The Defendant further agrees that the proffer of evidence supporting this guilty plea is sufficient evidence to support such forfeiture.

The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of his guilty plea or at any time before sentencing. The Defendant further agrees that this order will become final as to the Defendant when it is issued and will be part of his sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees that the Government may choose in its sole discretion how it wishes to accomplish forfeiture, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. The Defendant waives all rights to assert any interest in the forfeited property in the future, and will withdraw any prior claims made to forfeited property, whether they were made in a judicial or non-judicial forfeiture process.

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of said property to the Government, and (iii) to help the Government to rebut the claims of nominees

and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives her rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly,

threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

1-21-2026
Date

Derek Wiseman
Assistant United States Attorney

1/21/2026
Date

Siddharth Jawahar
Defendant

01/21/26
Date

Levell Littleton
Attorney for Defendant