**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cr-00718-ZMB |
| | ) | |
| SIDDHARTH JAWAHAR, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

The United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Derek J. Wiseman, Assistant United States Attorney for said District, files this Sentencing Memorandum and—pursuant to the parties' plea agreement—respectfully recommends that this Court impose a term of incarceration "within the bottom half of the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court[.]" *See* Doc. 104 ("Plea Agreement"), p. 2.

## BACKGROUND

For over seven years, defrauding investors was Defendant Jawahar's full-time job. He spent his days, nights, and weekends telling lies to those who trusted him most. Driven by an insatiable greed, Defendant Jawahar defrauded his investors out of more than $36 million—making his fraud one of the largest Ponzi schemes ever prosecuted in this district. After admitting his crimes and pleading guilty to three counts of Wire Fraud, the Presentence Investigation Report ("PSR") calculated the Sentencing Guideline range for Defendant Jawahar as follows: "[b]ased upon a total offense level of 34 and a criminal history category of I, the guideline imprisonment range is 151 months to 188 months." *See* PSR, ¶ 79. As the PSR correctly notes, if this Court applies the parties' agreed-upon Zero-Point Offender reduction under U.S.S.G Section 4C1.1, then

"the total offense level would be 32, resulting in a sentencing guideline imprisonment range of 121 to 151 months." *Id.* at ¶ 82. The United States is respectfully requesting that this Court impose a sentence within the bottom half of the Guidelines range determined by this Court, which is warranted for the reasons included below.

## ANALYSIS

### I. This Court Should Impose the Guidelines Sentence Requested by the United States Based on the Relevant Sentencing Factors.

Defendant Jawahar perpetrated one of the largest Ponzi schemes ever prosecuted in this district. After spending the better part of a decade telling lies designed to swindle his investors out of more than $36 million, Defendant Jawahar attempted to obstruct justice and escape accountability for his criminality. Based on the seriousness of his crimes, the lack of any mitigating circumstances warranting a downward variance, the need to promote respect for the rule of law, afford adequate deterrence, and protect the public, the United States respectfully requests that this Court impose its recommended Guidelines sentence.

#### A. The Nature and Circumstances of Defendant Jawahar's Crimes Make Clear That the Sentence Recommended by the United States is Warranted.

The nature and circumstances of Defendant Jawahar's crimes are undeniably serious. There are several factors that make Defendant Jawahar's crimes particularly serious, including the following:

**(1)** The breadth and magnitude of Defendant Jawahar's fraud;

**(2)** Defendant Jawahar's breach of trust and motivation to enrich himself; and

**(3)** Defendant Jawahar's obstruction of justice.

Based on these and other related factors, this Court's sentence should account for the egregious nature of Defendant Jawahar's fraud scheme.

First, Defendant Jawahar's fraud was massive in scope and scale. From 2016 until 2024, Defendant Jawahar used all of his vast talents to steal from his friends and business associates. For nearly a decade, almost all aspects of Defendant Jawahar's life were fraudulent. He lied about the source of his apparent wealth (which was actually his investors' money), his connections, his immigration status, the Texas State Securities Board cease and desist order, the value of his investments, and the use of his investors' funds. Defendant Jawahar's varied and systemic fraud resulted in one of the largest Ponzi schemes ever prosecuted in this district. As the evidence reveals, Defendant Jawahar's crimes were neither the product of a single, isolated mistake nor a one-time lapse in judgment. The crimes committed by Defendant Jawahar were the result of his calculated, years-long effort to enrich himself at the expense of his investors.

What makes Defendant Jawahar's crimes even more egregious is that they were motivated by greed and required a fundamental breach of his investors' trust. In many instances, Defendant Jawahar spent years working to cultivate the trust of his victims. He did so by fostering close bonds with his victims, many of whom considered Defendant Jawahar to be their friend. Defendant Jawahar's goal throughout this entire process was to use his victims—by taking advantage of their friendship and by breaching their trust. Thus, the harm caused by Defendant Jawahar's fraud scheme was much more than merely financial.

This Court's sentence must also account for Defendant Jawahar's motivation for committing his fraud scheme. The evidence in this case makes unmistakably clear that Defendant Jawahar's crimes were motivated by greed. During his scheme to defraud, Defendant Jawahar spent millions of his victims' dollars on a lifestyle that almost no one in this district could afford—

staying at five-star hotels, flying across the country on private jets, and dining at the finest restaurants.[1]







As courts across the country have concluded, Defendant Jawahar's avaricious motivation makes his crimes particularly serious and warrants a significant punishment. *See United States v. Beasley*, 355 F. App'x 78, 80 (8th Cir. 2009) (affirming an upward variance for a defendant who committed fraud because the defendant's crimes "were long-standing, sophisticated, [and] . . . motivated by greed") (cleaned up); *United States v. Vorotinov*, No. 15-CR-00541, 2021 WL

[1] Pictured here are examples of places where Defendant Jawahar spent his investors' money, including the Marble Room, the Beverley Hills Hotel, and private jet rides through JetSmarter.

5833910, at *3 (D. Minn. Dec. 9, 2021) ("As her underlying crime was primarily motivated by greed, the Court takes this conduct very seriously.").

Finally, this Court's sentence should also fully account for Defendant Jawahar's obstruction of justice. The PSR documents Defendant Jawahar's myriad attempts to obstruct justice and to escape accountability for his crimes. *See* PSR, ¶¶ 22–25. To summarize, Defendant Jawahar was caught attempting to obstruct justice in the following ways:

**(1)** He tried to coach a victim into providing a favorable statement to the FBI;

**(2)** He lied to the pretrial office and the court in the Southern District of Florida about his immigration status;

**(3)** He lied to the Magistrate Judge in this case about his finances; and

**(4)** He tried to get his sister to remotely wipe his iPhone to hide evidence of his fraud from investigators.

*See* Doc. 121, pp. 10–14. While Defendant Jawahar rightfully receives a two-level increase for his attempted witness tampering and evidence destruction under U.S.S.G. Section 3C1.1, *see* PSR ¶ 30, the Guidelines do not account for Defendant Jawahar's acts of additional obstruction. The Guidelines, for example, do not include any increased sentencing levels for Defendant Jawahar's lies to the Court about his immigration status and finances.

Making matters worse, Defendant Jawahar is now falsely denying his obstructive conduct. *See* Doc. 120, p. 4 (Defendant Jawahar falsely maintains in his PSR objection that he directed his sister to wipe the phone "not for her to obstruct" but to hide "text messages with other women that he did not want known by his partner"). *But see* Doc. 121-1, p. 12 (where Defendant Jawahar admitted to the FBI that "[t]his was part of Jawahar's misguided effort to try and hide his culpability"). Defendant Jawahar's false denial about his attempt to destroy evidence is

inconsistent with his acceptance of responsibility under Section 3E1.1. *See* U.S.S.G. § 3E1.1. cmt. n. 1(A) ("A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). Should Defendant Jawahar continue to maintain his false denial, this Court should refuse to reduce his offense level under Section 3E1.1.

**B. Defendant Jawahar's History and Characteristics Further Demonstrate That a Significant Sentence is Warranted.**

Nothing in Defendant Jawahar's background explains or excuses his crimes. And there are certainly no mitigating factors that warrant any reduction from the significant sentence that his serious crimes demand. The only fact listed in the PSR that could serve as a mitigating factor—that Defendant Jawahar has a "limited criminal history," *see* PSR, ¶ 98—should not serve as the basis for a sentencing reduction. That is true for two independent reasons.

First, Defendant Jawahar's lack of criminal history points is already accounted for by the Sentencing Guidelines and therefore should not serve as the basis for a sentencing reduction under Eighth Circuit precedent. The Eighth Circuit has repeatedly rejected sentencing reductions "predicated upon characteristics of the individual defendant for which the guidelines calculation already accounts." *United States v. McDonald*, 461 F.3d 948, 954 (8th Cir. 2006). For example, the court in *United States v. Myers*, 439 F.3d 415 (8th Cir. 2006), specifically rejected a sentencing reduction based on a lack of criminal history, which was already accounted for by the Guidelines:

> The only section 3553(a) factor identified by the district court that weighs toward a more lenient sentence is Myers' lack of criminal history. Inasmuch as a guidelines sentence reflects a defendant's criminal history, a wide divergence from the guidelines sentence based solely on this single criterion would conflict with the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*Id.* at 418. *See also United States v. Claiborne,* 439 F.3d 479, 481 (8th Cir. 2006) (rejecting a variance based upon the defendant's criminal history and other factors for which the guidelines already accounted); *United States v. Morales-Uribe*, 470 F.3d 1282, 1286 (8th Cir. 2006) (reversing and remanding for resentencing where "the district court justified its downward variance by considering the same facts that it considered in finding Morales-Uribe eligible for the § 3553(f) safety-valve"); *United States v. Feemster*, 483 F.3d 583, 589 (8th Cir. 2007) ("The absence of grounds that justify further punishment is not a ground for a downward variance.").

Applied here, Eighth Circuit precedent does not support a sentencing reduction based on Defendant Jawahar's lack of criminal history points because that fact is already fully accounted for by the Guidelines. Not only is Defendant Jawhar's lack of criminal history reflected in his criminal history score, but that same fact also results in a significant decrease in his Guidelines range with a two-level reduction in his total offense level under U.S.S.G. Section 4C1.1 (the "Zero-Point Offender" reduction). *See* Doc. 104 ("Plea Agreement), p. 11. Under Eighth Circuit precedent, Defendant Jawahar's lack of criminal history points should not serve as the basis for a sentencing reduction when it has already resulted in a substantial reduction in his Guidelines range.

Second, even if Defendant Jawahar's criminal history score did not already result in a decreased Guidelines range, his sentence should still not be reduced based on that score because it fails to reflect his persistent criminality over the course of nearly a decade. From telling countless lies to dozens of victims across the country, to spending millions of his victims' dollars on himself, to his obstruction of justice, Defendant Jawahar has committed federal crime after federal crime without any increase in his criminal history score. In short, Defendant Jawahar's criminal history score cannot form the basis of a sentencing reduction because it underrepresents his past criminality and his future risk of recidivism. *See United States v. Kuljko*, 1 F.4th 87, 99 (1st Cir.

2021) (finding that the defendant's criminal history category "grossly underrepresented the risk of his recidivism" partly because the defendant's "frauds had lasted over a decade; that the appellant had bilked his victims out of millions of dollars but had never helped to pay for the education of his own children; [and] that he had used his daughter's name to help facilitate his obstruction of justice"); *United States v. Robinson*, 28 F. App'x 50, 55 (2d Cir. 2002) ("[The] string of frauds is enormously probative of Nissenbaum's likelihood of recidivism. The fact that the frauds continued even after Nissenbaum was arrested, even after he was indicted, and even after he was convicted is particularly telling—it gives the court little reason to believe that he can be deterred from future crimes.").

Apart from the misleading nature of Defendant Jawahar's criminal history score, what is most striking about Defendant Jawahar's history and characteristics is the utter lack of mitigating circumstances. The PSR makes clear that—unlike many defendants—Defendant Jawahar does not suffer from drug addiction, gambling compulsion, significant physical health complications, or serious mental health issues. *See* PSR, ¶¶ 54–68. In addition, Defendant Jawahar does not have dependents who rely on his care, and he reports a supportive family, and educational opportunities that most defendants would envy. *Id.* A full review of Defendant Jawahar's history and characteristics reveals that nothing in his background—other than his well-documented avarice—explains his crimes in this case.

### C. A Guidelines Sentence is Necessary to Promote Respect for the Rule of Law, Protect the Public, and Afford Adequate Deterrence.

Defendant Jawahar's persistent disregard for the rule of law over the past decade demonstrates the need to protect the public and afford adequate specific deterrence. Make no mistake, Defendant Jawahar has demonstrated an inability to follow the law. Not only did

Defendant Jawahar defraud his investors out of over $36 million, but he continued to steal millions from his investors after civil lawsuits were filed against him, despite overt government investigations into his crimes, and even in violation of a Disciplinary Order from the Texas State Securities Board for Defendant Jawahar to cease and desist his ongoing fraud. Defendant Jawahar did all of that while he was here in this country illegally. Such persistent misconduct demands a significant sentence.

A Guidelines sentence would also send a critically important message to the wider community: that fraud crimes are taken seriously. Federal courts across the country have recognized that "economic and fraud-based crimes" are "more rational, cool, and calculated than sudden crimes of passion or opportunity," and thus these crimes are "prime candidate[s] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing Stephanos Bibas, White–Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L.Rev. 721, 724 (2005)). Indeed, the Eleventh Circuit in *Martin* noted that the legislative history of Section 3553 demonstrates that Congress viewed deterrence as "particularly important in the area of white-collar crime . . . even where [the defendant] might themselves be unlikely to commit another offense." *Id.* (emphasis added) (citing S. Rep. No. 98- 225, at 76, 91–92 (1983)). Indeed, "[d]efendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Martin*, 455 F.3d at 1240; *see also United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022) ("White collar criminals often calculate the financial gain and risk of loss of their crimes, and an overly lenient sentence sends the message that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty.") (internal citations omitted); *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2018) (agreeing with the "widely

accepted principle" that white collar crimes are "prime candidates for general deterrence"). These principles apply squarely to Defendant Jawahar's crimes, which were motivated by greed.

### D. A Guidelines Sentence Also Avoids Sentencing Disparities Among Defendants Guilty of Similar Conduct.

This sentencing factor is intended to address national sentencing disparities, and it has been widely recognized that a sentence closely tethered to the Guidelines range is the best way to avoid such disparities. *See e.g.*, *United States v. Smith*, 564 F. App'x 200, 205 (6th Cir. 2014) (stating that "one of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices") (quotation omitted). Thus, by imposing a Guidelines sentence, this Court will avoid unwarranted sentencing disparities with similarly situated defendants nationwide.

## CONCLUSION

For the foregoing reasons, and pursuant to the plea agreement, the United States is respectfully requesting that this Court impose a sentence within the bottom half of the Guidelines range determined by this Court.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

*/s/ Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel for the defendant.

/s/ Derek J. Wiseman
DEREK J. WISEMAN #67257MO
Assistant United States Attorney