UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:23-cr-00718-ZMB |
| | ) | |
| SIDDHARTH JAWAHAR, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR COURT APPROVAL TO MARRY**

The United States opposes Defendant's Motion for Court Approval to Marry (Doc. #143) for two reasons. First, Defendant's Motion to Marry is not properly before the Court because the required regulatory conditions to obtain court approval have not been satisfied. Second, even if the regulatory conditions were met here—which they are not—this Court should still deny the Motion to Marry because the United States believes that the marriage may be a pretextual attempt for Defendant Jawahar to obtain immigration status in the United States.

## FACTUAL BACKGROUND

Defendant Jawahar pleaded guilty to three counts of Wire Fraud on January 21, 2026. Doc. 104. During his years-long scheme to defraud, Defendant Jawahar defrauded his investors out of more than $36 million—making his fraud one of the largest Ponzi schemes ever prosecuted in this district. After admitting his crimes and pleading guilty to three counts of Wire Fraud, the Presentence Investigation Report ("PSR") calculated the Sentencing Guideline Range for Defendant Jawahar as follows: "[b]ased upon a total offense level of 34 and a criminal history category of I, the guideline imprisonment range is 151 months to 188 months." *See* PSR, ¶ 79.

Defendant Jawahar was arrested on these charges in January of 2024. Doc. 21-1. During his interview with the Pretrial Services Office in Florida at the time of his arrest, Defendant Jawahar represented that he was in a relationship with another woman (A.T.). *Id.* at 2. Defendant Jawahar further reported that he had "been dating [A.T.] for six months" prior to his arrest. *Id.* at 2. In his jail calls with his girlfriend (A.T.) at the time, Defendant Jawahar told A.T. that he wanted to get engaged, and that there was no one else he had "even a remote interest in."

After initially making false statements to the Pretrial Services Office about his immigration status, Defendant Jawahar eventually acknowledged to the Pretrial Services Office here in this district that he "is a non-citizen of the United States." Doc. 30, p. 2. At the time of his arrest in early 2024, Defendant Jawahar told the Pretrial Services Office here that "he had been in the process of obtaining a type of visa contingent upon his relationship with his girlfriend [A.T.], who was a United States citizen." *Id.* Defendant Jawahar now claims that he became engaged to Caroline Tredway later that same year. Doc. 143, p. 2.

**LEGAL STANDARD**

"Incarceration does not deprive an individual of the constitutionally protected right to marry, but it necessarily restricts it to account for legitimate penological interests." *United States v. Beltran-Ochoa*, No. 1:21-CR-00019-RGE-SHL, 2021 WL 4056816, at *1 (S.D. Iowa June 24, 2021) (citing *Turner v. Safley*, 482 U.S. 78, 95 (1987)). As district courts in this circuit have held, pre-trial detainees must follow the proper regulatory procedures to obtain court permission to marry. *See Beltran-Ochoa,* 2021 WL 4056816, at *1 ("[T]he individual must follow governing policy for seeking permission to marry."); *United States v. Bowen*, No. 14-00346-01-CR-W-DGK, 2015 WL 1893416, *4 (W.D. Mo. April 27, 2015) (applying the "regulations in place dealing with an inmate's desire to marry while in custody"). The applicable regulation requires the following:

> [a] pretrial inmate may request permission to marry in accordance with current Bureau of Prisons policy for convicted inmates. Staff shall contact the court, U.S. Attorney, U.S. Marshals Service, **and in the case of an alien, the Immigration and Naturalization Service, to advise of the marriage request of the pretrial inmate and to request their comments**."

*See* 28 C.F.R. § 551.111 (emphasis added).

In addition to applying the regulatory requirements, this Court must also "evaluate whether there is a 'legitimate and non-punitive governmental interest which is rationally related to prohibiting a pretrial detainee from exercising a constitutional right.'" *See Beltran-Ochoa,* 2021 WL 4056816, at *1 (quoting *United States v. Heard*, No. 17-CR-0083-LRR, 2018 WL 9439686, at *1 (N.D. Iowa Feb. 20, 2018)); *Bowen*, 2015 WL 1893416, at *10 (to prevent a pretrial detainee marriage, "the government is required to show only a legitimate and non-punitive governmental goal").

## ANALYSIS

This Court should deny Defendant's Motion to Marry at this time for two separate reasons. First, Defendant's Motion to Marry is not properly before the Court because the required regulatory conditions to obtain court approval have not been satisfied. Second, even if the regulatory conditions were met here—which they are not—this Court should still deny the Motion to Marry because the United States believes that the marriage may be a pretextual attempt for Defendant Jawahar to obtain immigration status in the United States.

### I. The Defendant's Motion to Marry is Not Properly Before the Court.

Defendant Jawahar has not satisfied the regulatory requirements to have this Court make a determination on his Motion to Marry. Those regulations require that, "in the case of an alien, the Immigration and Naturalization Service" must be contacted so that the agency can provide their comments about the proposed marriage. *See* 28 C.F.R. § 551.111. There is no evidence that the Immigration and Naturalization Service has been contacted—as is required—about Defendant

Jawahar's attempted marriage. Because Defendant Jawahar has failed to satisfy this regulatory requirement, his Motion to Marry should be rejected at this time.

The United States District Court in the Southern District of Iowa reached a similar conclusion in *Beltran-Ochoa*. *See* 2021 WL 4056816. In that case, the defendant, who was a pretrial detainee, sought court approval to get married while in custody. *Id.* The court, however, denied the defendant's motion to marry based partly on the defendant's failure to satisfy the regulatory requirements under 28 C.F.R. § 551.111. *Id.* Indeed, the court found that, "[a]s a matter of procedure, Defendant submitted his marriage request directly to the Court without first contacting facility staff at the Pottawattamie County Jail or the USMS. This violates Bureau of Prisons and USMS policy." *Id.* (citing 28 C.F.R. § 551.111). The court reasoned that these regulatory requirements need to be followed because "[p]rison officials and administrators are afforded deference in matters of prison management which, 'both by reason of separation of powers and highly practical considerations of judicial competence,' are 'peculiarly ill-suited' for judicial resolution." *Id.* (quoting *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996)). This Court should reject Defendant Jawahar's Motion to Marry for the same reason here.

## II. The United States' Investigation of Defendant Jawahar's Potential Marriage Fraud is a Legitimate, Non-Punitive Governmental Interest That Should Prevent His In-Custody Marriage at This Time.

As district courts in this circuit have held, "the government is required to show only a legitimate and non-punitive governmental goal" in order to temporarily prevent a pretrial detainee's marriage. *Bowen*, 2015 WL 1893416, at *10; *Beltran-Ochoa*, 2021 WL 4056816, at *1. The legitimate, non-punitive goal of the United States here is preventing possible marriage fraud. The circumstances of Defendant Jawahar's rushed marriage request—made without following the proper regulatory procedures—are undeniably suspicious. Indeed, when Defendant Jawahar

arrived in custody in this case, he was trying to get engaged to another United States citizen and obtain immigration status through that relationship.

What's more, a review of Defendant Jawahar's recent jail calls and messages reveals Defendant Jawahar's present motivation to avoid deportation by getting married to a U.S. Citizen. During a recent conversation that Defendant Jawahar had with Ms. Tredway—on June 30, 2026—Ms. Tredway asked him, "What if you get deported?" And Defendant Jawahar responded by saying, "if you don't marry me, I guess that might happen." During that same conversation, Defendant Jawahar told her that "the chance of me getting deported goes down dramatically" if they go through with the marriage.

In recorded conversations with Ms. Tredway's friends and family, Defendant Jawahar has also repeatedly indicated that he is not going to get deported following his attempted marriage. For example, during a jail call with Ms. Tredway's family members on July 25, 2026, Defendant Jawahar was asked, "what's your next move? You know, do you have a trial date?" Defendant Jawahar responded with the following:

> Um, I don't. I actually surpassed all of that. I took a plea deal. I'm expecting and hoping that we get as close to time served. If not, it might be a couple extra months somewhere, but then we focus on getting a pardon because there were a lot of gross violations of the law. But my move after that is—I'd most likely be teaching a class in business ethics at Fordham University.

In another recorded conversation that Defendant Jawahar had with Ms. Tredway's aunt that same day, he made the following statement: "I would love to visit you sometime. I'll be, I won't be here for too long, hopefully. So when I'm out back out and about, I'll bring over a bottle of wine. Do you like good wine?" During another conversation that same day, Defendant Jawahar tells another family member: "Once Bill meets me, we'll get along famously. We'll go to a nice bar in Cambridge [Massachusetts], we'll have a nice drink and we'll talk about war stories." When

reviewed as a whole, the numerous recorded statements made by Defendant Jawahar about avoiding deportation after his marriage demonstrate his potential illicit motive in obtaining that marriage.

Even more troubling, Defendant Jawahar's recorded statements are wholly inconsistent with his unequivocal representations to this Court that "[h]e will be removed from the United States." *See* Doc. 145-1, p. 26. There is no question that the representations made by Defendant Jawahar in his sentencing memorandum contradict his own recorded statements to Ms. Tredway and her family. Contrary to his recorded statements, Defendant Jawahar made the following unconditional representations to this Court:

- "[Defendant Jawahar] will be removed from the United States." *Id.* at 26;
- "Deportation will return him to a country he fled at seventeen[.]" *Id.* at 24;
- "After release from his extended stay in the BOP, Mr. Jawahar will continue his incarceration, as he will be immediately taken into immigration custody and placed in removal/deportation proceedings. Id., at ¶ 24. **Removal is not speculative**. Immigration counsel's opinion, based on the conviction and FOIA-obtained immigration records, is that Mr. Jawahar will be placed in removal proceedings, likely detained an additional six to twelve months by ICE after his sentence, and then ultimately removed." *Id.* at 23–24 (emphasis added);
- "Of course, these [removal] proceedings will ultimately result in the final blow to his life's work–removal from the country that has been his home since he was 17 where he hoped to spend the rest of his life." Id. at 3.

Defendant Jawahar's representations to this Court belie his true motivation that he has repeatedly expressed to Ms. Tredway and her family: His desire to avoid deportation after getting married. By concealing his true plan and motivation from this Court, Defendant Jawahar has demonstrated his potential illicit motive in obtaining this marriage. For that reason, the United States requests that this Court deny Defendant Jawahar's Motion to Marry at this time in order for the United

States to pursue the legitimate and non-punitive governmental goal of investigating potential marriage fraud.

**CONCLUSION**

For the reasons included above, the Court should refuse to issue an order allowing Defendant's proposed marriage to proceed at this time.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

*/s/ Derek J. Wiseman*

DEREK J. WISEMAN, #67257MO
Assistant United States Attorney
111 S. 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

All Attorneys of Record.

/s/ Derek J. Wiseman
DEREK J. WISEMAN #67257MO
Assistant United States Attorney