STRATEGIC COMMUNICATIONS, PUBLIC RELATIONS & ADVOCACY ENGAGEMENT AGREEMENT This Engagement Agreement (the “Agreement”) is entered into by and between Siddharth Jawahar (“Client”) and Axiom Strategies, through Jeff Roe (“Consultant”). Client and Consultant may each be referred to as a “Party” and collectively as the “Parties.”

1. ENGAGEMENT AND PURPOSE Client hereby engages Consultant to provide strategic communications, reputation management, public relations, advocacy, and related strategic consulting services in connection with Client’s ongoing legal, mitigation, sentencing, and post-sentencing efforts, including United States v. Siddharth Jawahar, Case No. 4:23-cr-00718-ZMB, United States District Court for the Eastern District of Missouri (the “Matter”). Consultant will work, as appropriate, in coordination with Client, the Jawahar Defense Team, Client’s criminal defense counsel, and other professionals engaged by Client. The purpose of the engagement is to assist Client in developing and implementing an effective strategy for presenting his background, professional and charitable history, rehabilitation, mitigation circumstances, and other appropriate matters to relevant media, governmental, public-policy, and other constituencies. The Parties acknowledge that the precise nature and timing of the services may necessarily evolve as circumstances surrounding the Matter develop. Accordingly, the scope of this engagement is intended to be sufficiently broad to permit Consultant to respond to reasonable strategic opportunities and needs without requiring a formal amendment for every individual activity.

2. SCOPE OF SERVICES Consultant shall provide strategic advice and assistance concerning Client’s reputation, public positioning, communications, media relations, advocacy, and related public-affairs matters. Such services may include development of an overall communications and advocacy strategy; advice concerning messaging, positioning, timing, media engagement, and reputational considerations; preparation and refinement of talking points, statements, briefing materials, correspondence, and other communications; identification and development of appropriate media and other relationships; and coordination, as authorized by Client, with individuals and organizations whose involvement may advance Client’s objectives. As part of the initial engagement, Consultant will use commercially reasonable efforts to assist with obtaining approximately one to two advocacy-oriented publications, articles, opinion pieces, interviews, or comparable placements in credible publications or media outlets, subject in all cases to

the editorial discretion and independent decisions of third parties. Consultant will also assist with the development and coordination of approximately one to two advocacy or support letters for consideration in connection with Client's forthcoming sentencing. The Parties understand that neither media placement nor the issuance or submission of any third-party letter can be guaranteed. The engagement will also include strategic assistance relating to Client's anticipated application for executive clemency or pardon, which Client expects to have prepared and submitted by a separate law firm. In that regard, Consultant may assist with developing the overall advocacy and communications strategy, identifying and appropriately engaging relevant relationships, and mobilizing available Client resources, professional relationships, community contacts, and other appropriate sources of support. Consultant may also assist with appropriate outreach concerning the pardon process, including, where strategically appropriate and legally permissible, communications with persons associated with the Office of the Pardon Attorney, the White House, or other relevant governmental or public-policy constituencies. Consultant's role in this regard is strategic, communications-oriented, and advocacy-related and does not include providing legal advice or preparing the legal pardon application. More generally, Consultant may provide such additional strategic communications, public-relations, advocacy, relationship-development, and public-affairs assistance as the Parties reasonably determine to be appropriate in furtherance of Client's objectives. The Parties intend that Consultant have reasonable flexibility to respond to developments and opportunities relating to the Matter, while preserving Client's right to approve material public communications and any significant external initiative undertaken on his behalf.

3. COORDINATION WITH COUNSEL Consultant shall coordinate, as appropriate, with the Jawahar Defense Team and Client's legal counsel. Nothing in this Agreement authorizes Consultant to provide legal advice, make legal judgments on Client's behalf, submit legal filings, or otherwise undertake activities reserved for licensed counsel. To the extent any proposed communications or advocacy activity implicates legal strategy, litigation positions, sentencing submissions, or the substance of a pardon application, Consultant shall defer to Client and his counsel regarding legal judgment and shall obtain such approvals as are reasonably appropriate before proceeding. Client shall retain ultimate authority over his public statements, participation in media opportunities, advocacy materials, and other substantive communications made in his name. Consultant shall not issue a substantive public statement or otherwise materially commit Client to a position without Client's authorization.

4. FEES The total fee for the initial engagement shall be Ten Thousand Dollars ($10,000), payable in four installments of Two Thousand Five Hundred Dollars ($2,500) each. The timing of the four installments shall be mutually agreed upon by the Parties. The foregoing fee constitutes the compensation for the initial scope of services described in this Agreement. Consultant shall not incur or charge Client additional professional fees for services within that scope without Client's prior approval. Any third-party expenses, media-related costs, travel, production expenses, or other out-of-pocket expenditures that Consultant proposes to incur on Client's behalf shall be discussed with and approved by Client in advance.

5. EXPANSION OF ENGAGEMENT The Parties recognize that the scope and intensity of Client's needs may change as the Matter progresses, including in connection with sentencing, post-sentencing advocacy, executive clemency efforts, media opportunities, or other developments. The Parties may therefore expand the scope of the engagement from time to time by mutual written agreement, including by email. Any material expansion of services and any corresponding adjustment to compensation shall be agreed upon in advance. Client shall have no obligation to retain Consultant for expanded services or to incur additional fees absent such agreement.

6. CONFIDENTIALITY Consultant shall maintain the confidentiality of non-public information provided by Client or the Jawahar Defense Team and shall not disclose such information except as authorized by Client, as reasonably necessary to perform the services contemplated by this Agreement, to personnel or professional advisers who have a legitimate need to know and are subject to appropriate confidentiality obligations, or as required by law. The Parties acknowledge, however, that information intentionally provided for publication, media outreach, governmental advocacy, or other external communications cannot be treated as confidential once disclosed to the intended recipient. Consultant shall use reasonable care in determining the appropriate treatment of information provided by Client.

7. NO GUARANTEE OF OUTCOME Client acknowledges that the services contemplated by this Agreement involve matters substantially dependent upon the independent judgment and actions of third parties. Consultant therefore does not and cannot guarantee any particular media placement, public reaction, governmental action, sentencing outcome, pardon or clemency outcome, or other specific result. Consultant agrees, however, to use

commercially reasonable efforts and its professional judgment in pursuing the objectives established with Client.

8. NO LEGAL REPRESENTATION Consultant is being retained solely as a strategic communications, public-relations, advocacy, and public-affairs consultant and not as legal counsel. Nothing in this Agreement creates an attorney-client relationship between Consultant and Client. All legal advice and legal representation relating to the Matter, sentencing, executive clemency or pardon applications, immigration matters, or any other legal proceeding shall remain the responsibility of Client's attorneys.

9. TERM AND TERMINATION This Agreement shall become effective upon execution by the Parties and shall continue until terminated by either Party. Client may terminate the engagement at any time upon written notice. Consultant may likewise terminate the engagement upon reasonable written notice. Upon termination, Client shall remain responsible for fees properly earned through the effective date of termination and for any previously approved third-party expenses incurred on Client's behalf. No unearned or future fees shall become due solely by reason of termination.

10. COMPLIANCE WITH LAW Consultant shall perform the services contemplated by this Agreement in accordance with applicable law and shall not be required to undertake any activity that Consultant reasonably believes would violate applicable law, regulation, ethics requirements, lobbying restrictions, or other applicable professional obligations. Client understands that certain advocacy and governmental-relations activities may be subject to applicable registration, disclosure, or other legal requirements, and the Parties agree to address such requirements as they arise.

11. WORK PRODUCT Materials specifically prepared by Consultant for Client in connection with the engagement may be used by Client and the Jawahar Defense Team for purposes relating to the Matter and related advocacy efforts. Consultant shall retain ownership of its pre-existing materials, methodologies, templates, know-how, and proprietary processes.

12. MISCELLANEOUS This Agreement constitutes the understanding of the Parties concerning the initial engagement and supersedes any prior discussions or understandings

concerning the same subject matter. Any amendment, modification, or expansion of this Agreement may be made by mutual written agreement, including by email. If any provision of this Agreement is determined to be unenforceable, the remaining provisions shall remain in full force and effect. This Agreement may be executed electronically and in counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. The Parties acknowledge that they have reviewed this Agreement and agree to be bound by its terms.

CLIENT Siddharth Jawahar Signature: ______________________________

Date: ______________________________

CONSULTANT Axiom Strategies By: Jeff Roe Signature: ______________________________
Date: